**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UTICA NATIONAL INSURANCE CO. OF OHIO,
*as subrogee of* VOORHEESVILLE CENTRAL
SCHOOL DISTRICT,

                           Plaintiff,

        v.                                    6:22-CV-1231 (BKS/PJE)

PVI INDUSTRIES, LLC; WATTS HEATING AND
HOT WATER SOLUTIONS, LLC, *d/b/a* PVI
INDUSTRIES; XYLEM, INC., *d/b/a* BELL &
GOSSETT,

                           Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| COFFEY LAW PLLC<br>17 Elk Street<br>Albany, New York 12207<br>Attorneys for plaintiff | DANIEL W. COFFEE, ESQ. |
| COZEN, O'CONNOR LAW FIRM<br>1650 Market Street, Ste. 2800<br>Philadelphia, Pennsylvania 19103<br>Attorneys for plaintiff | MICHAEL D. O'DONNELL, ESQ. |
| GOLDBERG SEGALLA LLP<br>500 Enterprise Drive - Suite 402<br>Rocky Hill, Connecticut 06067<br>Attorneys for defendants<br>PVI Industries, LLC and<br>Watts Heating and Hot Water<br>Solutions, LLC d/b/a PVI<br>Industries, LLC | JOSHUA L. MILRAD, ESQ.<br>BILAL CHAUDRY, ESQ. |
| NAPIERSKI, VANDENBURGH LAW FIRM<br>296 Washington Avenue Extension<br>Albany, New York 12203<br>Attorneys for defendants<br>Xylem, Inc. d/b/a Bell & Gossett | SHAWN F. BROUSSEAU, ESQ.<br>STEVEN EDWIN MACH, ESQ. |

**PAUL J. EVANGELISTA**
**United States Magistrate Judge**

### MEMORANDUM-DECISION & ORDER

Presently pending before the Court is defendants' PVI Industries, LLC and Watts Heating and Hot Water Solutions, LLC[1] (collectively "PVI") Motion to Compel, filed February 21, 2025, seeking to compel defendant Xylem, Inc. d/b/a Bell & Gossett ("Xylem") to supplement its responses to PVI's Second Set of Requests for Production.[2] *See* Dkt. Nos. 65, 65-1. On March 10, 2025, defendant Xylem opposed PVI's motion. *See* Dkt. No. 67. On March 11, 2025, the Court held a conference to address PVI's filing of a motion to compel without first seeking a pre-motion conference and heard from counsel about their positions on the motion to compel. The Court granted PVI's counsel permission to file a reply to Xylem's response. PVI replied on March 14, 2025. *See* Dkt. No. 69. For the following reasons, PVI's motion to compel is granted.

### I.     Background

Familiarity with the facts and issues underlying this case is presumed; thus, the Court will repeat the relevant facts herein only as necessary to review the instant motion. Plaintiff Utica National Insurance Co. of Ohio, as subrogee of Voorheesville Central School District, filed an Amended Complaint on December 09, 2022. *See* Dkt. No. 11. Plaintiff contends that prior to January 26, 2020, a model 50 L 130A-GCML Water Heater ("Water Heater") manufactured, designed, distributed, assembled, and/or

---

[1] In its motion, Dkt. No. 65, defendant PVI indicates that it was incorrectly named as Watts Heating and Hot Water Solutions d/b/a PVI Industries. For purposes of this decision, the Court will refer to the moving defendants as it identifies itself in this motion, PVI.
[2] PVI acknowledges its document request was mistakenly titled First Set of Requests for Production when served.

2

sold by Defendant PVI and/or Watts was installed in the Clayton A. Bouton High School ("Subject Property"). *See* Dkt. No. 11 at ¶18.  Plaintiff alleges that the Water Heater included a circulating pump which defendant Xylem manufactured, designed, distributed, assembled, and/or sold.  *See id.* at ¶19. It further alleges that on or about January 26, 2020, the Water Heater and/or its component parts, including the Circulator Pump, failed and allowed water to flood the Subject Property (the "incident"). *Id.* at ¶ 20 Plaintiff alleges that the incident caused significant damage to the Subject Property. *See id.* at ¶22

All parties have answered the amended complaint. *See* Dkt. Nos. 29, 30. Defendants PVI and Xylem have asserted cross claims against each other.  *See id.* Both deny the other's crossclaim. *See* Dkt. No. 32, 33.

## II.     Arguments

### A.     Defendant  PVI's Motion

On January 2, 2025, PVI served on Xylem its Second Set of Requests for the Production of Documents.  *See* Dkt. No. 65-2.  On February 4, 2025, Xylem responded to the Second Set of Requests for Production. *See* Dkt. No. 65-3.  PVI asserts that Xylem's responses were all deficient. *See* Dkt. No. 65-1 at ¶4.  It alleges that, in response to its requests for documents related to "any PL-75 motor pump and "the PL-75 motor pump," Xylem produced responses related to only the "Bell & Gossett Motor Pump, #1BL113, Model # PL-75 115 VAC w/ impeller."  *Id.*  PVI argues that the other PL-75 pumps Xylem produced contain motor pumps and are, therefore, subject to the Request to Produce. *See id.* at ¶¶ 4, 5, 10.  PVI seeks supplemental responses that include documents pertaining to all PL-75 pumps Xylem produces, not limited to the

"Bell & Gossett Motor Pump, #1BL113, Model # PL-75 115 VAC w/impeller." *See id.* at ¶¶4, 13.

### B.   **Defendant Xylem's Response**

Defendant Xylem argues that PVI's motion to compel is procedurally and substantively defective.  *See* Dkt. No. 67 at 3.[3]  Procedurally, Xylem argues that Local Rule 37(c) requires a discovery conference with the magistrate judge before filing amotion to compel.  Xylem asserts that PVI failed to do so, and, therefore, the motion should be denied. *See id.* Substantively, Xylem argues that the motion must be denied because PVI requests documents relating to "PL-75 motor pump" failures, and Xylem has fully responded to each of those requests. *Id.*  Xylem contends that PVI specifically requested documents relating to PL-75 motor pumps, which is what was specified and purchased for the hot water heater design application at issue in this litigation.  *See id.* at 9.  Xylem contends that what PVI now seeks are documents relating to PL-75 circulator pumps, which, Xylem alleges, were not requested, were not and could not be used with the applicable hot water heater design and had nothing to do with the failure mode as alleged in this litigation.  *See id.* at 11.  Thus, it argues that this request is not relevant and urges the Court to deny the motion to compel.  *See id.*

### C.   **PVI's Reply**

In its reply, PVI disagrees with the distinction Xylem draws between "motor pumps" and "circulator pumps" and reiterates its belief that the second request for production encompasses all PL-75 pumps Xylem sold to other entities.  Dkt. No. 69 at

---

[3] The Court's citations are to the pagination located at the header of each page, generated by the Court's case management and electronic filing system.

4

1-2. PVI further contends that Xylem's argument that "the failure mode in this litigation is specific to PVI/Watts' design application of the PL- 75 motor pump (i.e., without volute)," is incorrect for two reasons. *Id.* at 2. First, Plaintiff's claim that PVI's water heater design was defective will require proof of a safer alternative design. Both plaintiff and Xylem have presented expert opinions opining that PVI's use of a volute-less pump at a particular orientation and location caused the shaft seal failure at issue. *See id.* Therefore, PVI contends that discovering whether other pump designs experience similar failures is essential to determining whether a safer alternative design was available to PVI. *See id.*

Second, PVI argues that shaft seal failures of PL-75 pumps are relevant regardless of whether those pumps shared the exact design with the pumps PVI purchased. *See* Dkt. No. 69 at 2-3. They claim that Xylem acknowledges that "all parties agree that the stud failures were related to water leaking past the pump's mechanical seal and damaging the impeller shaft." *Id.* at 3. PVI claims that with or without a volute, the entire PL-75 series of pumps uses the same motors, seals, and impellers. *See id.* at 2 (citing *id.* at 5, ¶3). In support, they reference a seal repair kit sold for both PL-75 "circulator pumps" and "motor pumps" as described by Xylem. *Id.* at 6, ¶¶ 4, 5 (citing *id*. at 8). Therefore, PVI concludes, documents related to other PL-75 failures involving the same internal components are relevant.

### III. Legal Standards

#### A. Local Rules 37.1 and 7.1

Northern District of New York ("N.D.N.Y.") Local Rule 37.1 ("L.R.") addresses discovery motions, specifically listing the steps this District requires a party to take

before making any discovery motion pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure.  As is relevant here, L.R. 37.1 (c) states,

> If the parties' conference does not fully resolve the discovery issues, the party seeking relief must then request a court conference with the assigned Magistrate Judge. Pro se parties who are incarcerated are not subject to the court conference requirement prior to filing a motion to compel discovery. The assigned Magistrate Judge may direct the party making the request for a court conference to file an affidavit setting forth the date(s) and mode(s) of the consultation(s) with the opposing party and a letter that concisely sets forth the nature of the dispute and a specific listing of each of the items of discovery sought or opposed. Immediately following each disputed item, the party must set forth the reason why the Court should allow or disallow that item.

N.D.N.Y. L.R. 37.1 (c).

L.R. 7.1 addresses motion practice in general.  Specifically, L.R. 7.1 (a)(2) sets forth the procedure to be followed when non-dispositive motions are considered:

> Prior to making any non-dispositive motion before the assigned Magistrate Judge, the parties must make good faith efforts among themselves to resolve or reduce all differences relating to the non-dispositive issue. If, after conferring, the parties are unable to arrive at a mutually satisfactory resolution, the party seeking relief must then request a court conference with the assigned Magistrate Judge.

N.D.N.Y. L.R. 7.1 (a)(2).  "A court conference is a prerequisite to filing a non-dispositive motion before the assigned Magistrate Judge." *Id*.  "[T]he moving party is required to set forth the date that the court conference with the magistrate was held regarding the issues being presented in the motion." *Id*.  "Failure to include this information in the Notice of Motion may result in the Court rejecting the motion papers." *Id*.  "The Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown." N.D.N.Y. L.R. 7.1 (a)(3).

### B.  Federal Rule of Civil Procedure 26

Under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Rule 26 instructs the court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)). "The party seeking discovery bears the initial burden of proving the discovery is relevant . . ." *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012).

> If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Freydl v. Meringolo*, 09 Civ. 07196(BSJ)(KNF), 2011 WL 2566087, at 3 (S.D.N.Y. June 16, 2011). Specifically, the resisting party must show how, "despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442, 2008 WL 3166662, at 3 (S.D.N.Y. Aug. 4, 2008).

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016).

### IV.  Discussion

A.  **Failure to request a pre-motion conference**

7

The Court is satisfied that prior to filing its motion to compel production, defendant PVI satisfied all the requirements of L.R. 7.1 and 37, except the request for a conference prior to filing the motion.  Namely, PVI sent notice to counsel for Xylem requesting to meet and confer regarding their responses. *See* Dkt. No. 65-1 at ¶6.  The relevant parties met and conferred on February 10, 2025, attempting to resolve the discovery issues.  *See id.* at ¶7.  Counsel for PVI and Xylem made additional attempts to confer by email but were unable to reach a resolution.  *See id.* at ¶11.  During the Court conference on March 11, 2025, PVI set out its attempts at resolving the issue pre-motion and acknowledged the failure to seek a pre-motion conference as an oversight.  At the conference, the Court recognized the significant compliance with the Local Rules and accepted defendant's proffer explaining its failure to seek a pre-motion conference.  Considering the good faith efforts made to resolve this discovery dispute, and because this matter has been fully briefed, the Court will consider the merits of the Defendant's Motion to Compel despite the failure to fully comply with the Local Rules.

## B.   Relevance of Other PL-75 Pumps

Defendant PVI asserts that the documents related to all PL-75 pumps are relevant on two main grounds.  First, while not necessarily relevant to Xylem, the performance of other PL-75 pumps available to PVI at the time PVI designed the Water Heater for plaintiff is relevant to PVI to defend against plaintiff's claim of defective design.  Whether a safer alternative design was available at the time of the original design is relevant to this determination.  Second, because the internal components of all PL-75 pumps appear similar, if not the same, the performance of those internal components are relevant to the failure alleged here – that the stud failures were related

to water leaking past the pump's mechanical seal and damaging the impeller shaft.  It follows that documents pertaining to the failure of other PL-75 pumps, if such documentation exists, are potentially relevant to the present litigation.

The Court agrees with defendant PVI on the relevance of the documents it seeks pertaining to PL-75 pumps, whether voluted or voluteless. "This is relevant information in the Rule 26(b)(1) sense, particularly given the expansive construction accorded to the term 'relevant' during the discovery phase of a case, because it "has a[ ] tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." *Huseby, LLC v. Bailey*, No. 3:20-CV-00167 (JBA), 2021 WL 3206776, at *14 (D. Conn. July 29, 2021) (quoting *In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. Nov. 3, 2003)).

> "The general purpose of discovery is 'to inform the adversary of what theories an[sic] party proposes to 'develop' at trial, and on what basis a jury will be asked to award damages.' *New Haven Temple SDA Church v. Consol. Edison Corp.,* No. 94 Civ. 7128, 1995 WL 358788, at 5, 1995 U.S. Dist. LEXIS 8220, at 16–17 (S.D.N.Y. June 13, 1995). The discovery rules, 'together with pretrial procedures[,] make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent' by requiring disclosure of *all* relevant information.' *United States v. The Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)(citing *Hickman v. Taylor,* 329 U.S. 495, 500–1, 67 S.Ct. 385, 91 L.Ed. 451 (1947))."

*In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003).

PVI has met its burden of showing relevancy, and the court is convinced that the internal components of the PL-75 pumps with pump body, and those without, like the Bell & Gossett Motor Pump, #1BL113, Model # PL-75 115 VAC w/ impeller, are sufficiently similar to support the relevance of the failure of any internal components of those pumps with pump body, to the claims and defenses at issue in this litigation.

"Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation. For example, where a plaintiff alleged that three-wheel all-terrain vehicles are inherently unstable, he was entitled to discovery with respect to each of the manufacturer's models." *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 441 (S.D.N.Y. 1990). PVI provided an affirmation from Michael Hubbard, PVI's Senior Director of Research and Development attesting to the similarity of the internal components of the PL-75 series of pumps manufactured by Xylem.  Dkt. No. 69 at 5, ¶3. Defendant Xylem concedes that both PL-75 motor pumps and PL-75 circulator pumps have a motor, impeller shaft/rotor assembly, and an impeller. *See* Dkt. No. 67 at n.1. They argue that the voluted pumps could not be used for the hot water heater design application at issue in this litigation. *See id.* at 3. Thus, could have nothing to do with the failure mode alleged.  The Court agrees with PVI, that "all parties agree that the stud failures were related to water leaking past the pump's mechanical seal and damaging the impeller shaft." Id. at 3. The potential relation of water leaking past the pump's mechanical seal, to the subsequent failure of the impeller shaft, and the ultimate failure of two of the four welded studs satisfies the court that relevancy has been established at this stage to compel the requested production. The information PVI's Second Set of Requests for Production seeks is reasonably calculated to lead to the discovery of admissible evidence.  As such, the requests are relevant to the claims and defenses presented in this case.

> The Court's decision on this discovery, however, should not be taken as a ruling on admissibility. It must be remembered that Fed. R. Civ. P. 26(b)(1) specifically states that discovery is not objectionable because ". . . the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

*Uitts v. Gen. Motors Corp.*, 58 F.R.D. 450, 452 (E.D. Pa. 1972); see also *Santos v. Schroeder*, No. 9:19-CV-01610 (BKS/TWD), 2022 WL 2865974, at *1 (N.D.N.Y. July 21, 2022) ("Information still "need not be admissible in evidence to be discoverable.") (citing FED. R. CIV. P. 26(b)(1)).

## V.     Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby **ORDERED**, that defendant PVI's Motion to Compel, Dkt. No. 65, is **GRANTED.**

**IT IS SO ORDERED**.

Dated: May 20, 2025
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge